[No. D040210. Fourth Dist., Div. One. July 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
YOLANDA FAY HARDEN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

850

**COUNSEL**

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Gary W. Schons, Assistant Attorneys General, Steven T. Oetting and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McDONALD, J.**—Yolanda Fay Harden appeals a judgment entered following her jury convictions of murder (Pen. Code, § 187, subd. (a)),[1] first degree residential robbery (§§ 211, 212.5, subd. (a)), first degree residential burglary (§§ 459, 460), infliction of cruelty on an elderly person (§ 368, subd. (b)(1)), and escape without force from jail while felony charges were pending (§ 4532, subd. (b)). The jury also found true special circumstance allegations that the murder was committed in the commission of a robbery (§ 190.2, subd. (a)(17)(A)) and that the murder was committed in the commission of a burglary (§ 190.2, subd. (a)(17)(G)). On appeal, Harden contends the trial court erred by instructing with: (1) a modified form of CALJIC No. 2.15 on possession of stolen property; (2) modified forms of CALJIC No. 8.81.17 that omitted paragraph 2 of the standard instruction on felony-murder special circumstances; and (3) a modified form of CALJIC No. 8.80.1 on special circumstances.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 2, 2000, Alfred and Marion Polchow, an elderly married couple, lived in a duplex in a senior retirement community.[2] Signs posted at the entrance to the retirement community identified it as for persons 55 years of age or older. While the Polchows were in bed that morning, their doorbell rang. Alfred answered the door and returned to the bedroom, informing Marion that a woman was at the door who wanted to use their telephone to call a taxi. Alfred allowed the woman to use their telephone. Alfred returned to the bedroom again, appeared to be upset, and then went back to the living room.

Marion fell back asleep and when she awakened she saw a woman standing in her bedroom looking at jewelry and credit cards that the Polchows kept on top of their dresser. The woman was very dark-complexioned, had her hair pulled back, and wore a white T-shirt that did not have a high neckline. The woman then returned to the living room. Marion later saw the woman leave the house through the back door.

---

[1] All statutory references are to the Penal Code.

[2] Alfred was 85 years old and Marion was 80 years old. For clarity, we refer to the Polchows separately by their first names.

Marion went into the living room to see what happened to Alfred. She found him "curled up" on the sofa. He was not awake. Taxi driver Gerard Kelly then appeared at the front door and told Marion someone had called for a taxi. Kelly arrived about 10 or 15 minutes after he had been dispatched to the Polchows' address. Marion told Kelly that maybe the woman who had been there had called for a taxi. From outside the screen door, Kelly saw Alfred slip from the sofa to the floor as Marion tried to get him to respond. Marion asked Kelly to call for an ambulance, but he suggested that she make the call. At 10:56 a.m. Marion called 911 for assistance.

Oceanside Police Officer Richard Irwin arrived at the Polchows' home about 11:04 a.m. Alfred was dead. Marion appeared confused and delusional. She told Irwin she saw a woman enter and leave her bedroom. After speaking to Alfred's physician and learning of his heart condition, Irwin initially believed Alfred died of natural causes. When Irwin returned to the Polchows' home the following day, Marion appeared more coherent. She told him some of her rings were missing and that someone had fraudulently attempted to use one of their bank cards. Irwin no longer believed Alfred died of natural causes. Costume jewelry that Marion kept in the kitchen was missing.

An autopsy showed Alfred died of strangulation. Petechial hemorrhaging was found on his face and in the conjunctivae of his eyes. His head was red. There was a white line of demarcation around Alfred's lower neck, consistent with a ligature being placed across his neck. There were abrasions near the white line. There were curvilinear abrasions on his cheek that were consistent with fingernail marks. The upper left horn of his thyroid cartilage in his neck was fractured, which was consistent with strangulation. He also sustained other injuries that probably were caused by blunt force or a fall.

Marion's Visa check card was missing from her home. At 11:32 a.m. on October 2, someone made three attempts to use that card to withdraw $100 from an automated teller machine (ATM) at a gasoline station in Vista. Those attempts were unsuccessful because the correct personal identification number (PIN) was not entered. Later that day, two unsuccessful attempts were made to withdraw $80 from an ATM using that card. Also, there were three unsuccessful attempts at an ATM to borrow money with that card. Marion's missing card was successfully used to make eight telephone calls. The first call was made at 12:02 p.m. on October 2. The first two calls were made to a telephone number at Camp Pendleton barracks at which Markco Whipple resided. Harden was dating Whipple at the time. The other six calls were made from a telephone number belonging to Alysia Everett. Harden was temporarily staying at Everett's Vista apartment at the time. The last five calls were made to area code 925, which includes Concord and Pittsburg, California, an area in which Harden had relatives and had previously resided.

Some of those calls were made to Harden's relatives. Everett did not know anyone who lived in the 925 area code.

At 1:35 p.m. on October 2, two of Marion's missing rings were pawned for $75 each at an Oceanside pawn shop. The person who pawned those rings presented Harden's California driver's license. The person's thumbprints on the two pawn slips matched Harden's thumbprints.

Two residents of the senior retirement community, Lillian Frick and Nancy Porter, identified Harden for police as the woman they saw near the Polchows' home on October 2.

Police searched the home of Martha Justice, Harden's mother. Justice showed police Harden's clothing, which included a black jacket with three white stripes on its sleeve and blue nylon sweat pants with a white stripe.

An information charged Harden with murder and four other offenses and alleged two felony-murder special circumstances in the commission of the murder.[3] At trial Frick testified that about 9:00 or 9:30 a.m. on October 2, 2000, she saw a woman walking in the retirement community toward the Polchows' home. She was wearing dark clothing and her hair was pulled straight back. The woman had a piece of lined paper in her hand. She was not carrying a purse or plastic bag. The woman told Frick she was a caregiver and was looking for a certain address. Frick walked to another home in the retirement community, where she walked a dog. Afterward, about 10:00 a.m. or later, Frick was walking back when she saw a truck drive by her with the woman she had seen earlier sitting in the passenger seat. As the truck drove by, the woman stared at Frick. The driver of the truck was male. When Frick saw a photograph of Harden in the newspaper, she contacted police regarding her October 2 observations. At trial, Frick testified she was 75 to 80 percent certain that Harden was the woman she saw that day.

Porter testified that about midmorning on October 2, 2000, she saw a dark-complexioned woman standing on a street corner in the retirement community near her home. The woman appeared to be "hanging out" and agitated. The woman was "very busty" and was wearing a white T-shirt with a lower neckline. Her hair was pulled back very tightly. She was wearing dark navy blue jogging-style pants with a white stripe on the side. She was holding a dark jacket with some white on it that appeared to match the pants. The woman was holding a plastic grocery bag that seemed to have something

---

[3] The information also alleged that Harden personally inflicted great bodily injury on a person 70 years of age or older in committing the robbery, burglary, and infliction of cruelty on an elderly person (§ 12022.7, subd. (c)). It also alleged the robbery and burglary were committed against a person 65 years of age or older (§ 667.9, subd. (a)).

heavy at the bottom. Porter went to answer her telephone and when she returned after a minute or two, the woman was gone. Shortly thereafter, Porter saw a taxi drive by her home. Porter wrote notes on what she observed and later told a neighborhood watch representative about her observations. At trial, Porter had no doubt that Harden was the woman she observed on October 2. Because Porter was afraid Harden had seen her and knew where she lived, Porter told police when they first contacted her that she could not identify anyone in a photographic lineup that included Harden's photograph. However, at trial she testified she had recognized Harden's photograph in that lineup. Porter later told her husband and a friend that she had recognized Harden's photograph but told the police she could not identify anyone. When the police subsequently contacted Porter, she saw Harden's photograph in the officer's notebook, took it out of the notebook, and told the officer that it depicted the woman she saw.

Kelly testified he worked for Courtesy Cab Company, which operated about 10 taxis. On September 20, 2000 (about two weeks before the incident), Kelly picked up a woman at the address of Everett's Vista apartment complex.[4] While transporting that woman, he was directed to and stopped at an address of an apartment complex where Harden had previously lived.

In July 1998 Harden was working in Texas for a company that provided care for the elderly. Harden provided care for Ethel Woollard's elderly neighbor. On the morning of July 23, 1998, Harden knocked on Woollard's door, told her she had run out of gas, and asked to use Woollard's telephone to call her boyfriend. As Harden used Woollard's telephone, a television service man arrived. Harden asked to use Woollard's bathroom. When the service man left, Harden conversed with Woollard for a while. About 20 to 25 minutes after Harden left Woollard's home, Woollard received a call from a check-cashing company, informing her that Harden had attempted to cash Wollard's check for $395 payable to Harden for housekeeping services. Woollard had not written that check or any check to Harden. Woollard then discovered that blank checks were missing from her purse.

On April 7, 2001, while Harden was in custody at the Las Colinas detention facility, she began suffering abdominal pains related to her pregnancy. She was transported by the sheriff's department to Alvarado Hospital for treatment. In the afternoon, private security took over the duty of guarding Harden. About 6:00 a.m. the next morning, the guard released Harden from her restraints and allowed her to use the adjoining bathroom. Harden escaped, apparently by leaving the bathroom through another door

---

[4] Harden was temporarily staying at Everett's apartment at the time.

that connected the bathroom to an adjacent room. With the assistance of Justice (Harden's mother), police later apprehended Harden at a gasoline station.

Following the jury's convictions of Harden on all counts and true findings on all special circumstance and other allegations, the trial court sentenced her to an indeterminate term of life in prison without the possibility of parole for first degree murder with special circumstances, to be served consecutive to an aggregate term of six years four months.[5]

Harden timely filed a notice of appeal.

## DISCUSSION

### I

*Modified CALJIC No. 2.15 on Possession of Stolen Property*

Harden contends the trial court erred by instructing the jury on possession of stolen property with a modified form of CALJIC No. 2.15.

### A

Count 1 of the information charged Harden with the unlawful murder of Alfred (§ 187, subd. (a)). The allegations in count 1 of the information (as modified by the jury instructions) alleged that Harden's murder of Alfred was committed while she was engaged in or during the course of the commission or attempted commission of robbery and burglary (§ 190.2, subd. (a)(17)). Count 2 charged Harden with the first degree residential robbery of Alfred (§§ 211, 212.5, subd. (a)). Count 3 charged Harden with first degree residential burglary (§§ 459, 460).

Overruling Harden's objection, the trial court instructed with the following modified form of CALJIC No. 2.15: "If you find that the defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crimes of robbery and burglary, as alleged in counts 2 and 3 of the information, *and that the allegations alleged in count 1 of the information, that the murder of Alfred Polchow was committed by the defendant during the commission of the crimes of robbery and burglary.* Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's

---

[5] The court imposed a three-year term for the escape charge and three years four months for two prior convictions for which Harden's probation was revoked. The court stayed imposition of sentences for the other three convictions and related allegations.

guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt. [¶] As corroboration, you may consider the attributes of possession—time, place and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, her false or contradictory statements, if any, and other statements she may have made with reference to the property, a false account of how she acquired possession of the stolen property, any other evidence which tends to connect the defendant with the crime charged." (Italics added.) In discussing with counsel its modified form of CALJIC No. 2.15, the trial court stated CALJIC No. 2.15 should not be given regarding the charge of murder, but should be given regarding the special circumstance allegations relating to robbery and burglary.

### B

Harden concedes the trial court did *not* err by giving CALJIC No. 2.15 regarding the charges of robbery and burglary. ■ Appellate courts have concluded CALJIC No. 2.15 may properly be given regarding charges of robbery, burglary and other theft-related offenses in cases in which there is sufficient evidence to support findings the defendants possessed recently stolen property. (*People v. Prieto* (2003) 30 Cal.4th 226, 249 [133 Cal.Rptr.2d 18, 66 P.3d 1123] ["[w]e have approved the use of CALJIC No. 2.15 with respect to theft offenses"]; *People v. Smithey* (1999) 20 Cal.4th 936, 976–977 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *People v. Holt* (1997) 15 Cal.4th 619, 677 [63 Cal.Rptr.2d 782, 937 P.2d 213]; *People v. Johnson* (1993) 6 Cal.4th 1, 35–38 [23 Cal.Rptr.2d 593, 859 P.2d 673]; *Barnes v. United States* (1973) 412 U.S. 837, 843–844 [37 L.Ed.2d 380, 93 S.Ct. 2357]; *People v. Barker* (2001) 91 Cal.App.4th 1166, 1173–1175 [111 Cal.Rptr.2d 403]; *People v. Gamble* (1994) 22 Cal.App.4th 446, 452–455 [27 Cal.Rptr.2d 451]; *People v. Anderson* (1989) 210 Cal.App.3d 414, 420–432 [258 Cal.Rptr. 482].) In *Barker*, we noted CALJIC No. 2.15 generally "is a permissive, cautionary instruction which inures to a criminal defendant's benefit by warning the jury not to infer guilt merely from a defendant's conscious possession of recently stolen goods, without at least some corroborating evidence tending to show the defendant's guilt. [Citations.]" (*Barker, supra,* at p. 1174.)

Rather, Harden contends the trial court erred by modifying CALJIC No. 2.15 to add the reference to the special circumstance allegations related to the murder charge. She argues the court's modification resulted in an improper pinpoint instruction on the special circumstance allegations that misled the jury regarding the prosecution's burden of proof. We conclude the trial court did not err by modifying CALJIC No. 2.15 to include special circumstance allegations related to robbery and burglary.

Although the published cases to date have approved CALJIC No. 2.15 for use regarding theft-related *offenses*, there appears to be no valid reason to preclude its use regarding theft-related *allegations*. One of the elements of a section 190.2, subdivision (a)(17) special circumstance allegation is the commission (or attempted commission) of a robbery, burglary, or other listed felony offense.[6] Because CALJIC No. 2.15 may properly be given as a cautionary instruction regarding the offenses of robbery and burglary (*People v. Barker, supra*, 91 Cal.App.4th at p. 1174), it logically also may properly be given as a cautionary instruction regarding allegations that include as elements the offenses of robbery or burglary. If properly worded, the instruction would inure to the defendant's benefit because it would warn the jury not to infer the existence of the element of robbery or burglary of a special circumstance allegation from the defendant's conscious possession of recently stolen property, without corroborating evidence.[7] (Cf. *Barker, supra*, at p. 1174.) Contrary to Harden's assertion, that instruction would not mislead the jury regarding the prosecution's burden of proof.

■ Courts have consistently concluded that CALJIC No. 2.15, when given with other instructions on the elements of offenses and the burden of proof, does not alter the prosecution's burden to prove a defendant's guilt beyond a reasonable doubt or otherwise violate a defendant's constitutional rights. (*People v. Prieto, supra*, 30 Cal.4th at p. 248; *People v. Smithey, supra*, 20 Cal.4th at pp. 976–979; *People v. Holt, supra*, 15 Cal.4th at p. 677; *People v. Barker, supra*, 91 Cal.App.4th at p. 1174 [CALJIC No. 2.15's "inference of guilt has been held not to relieve the prosecution of its burden of establishing guilt beyond a reasonable doubt"]; *People v. Gamble, supra*, 22 Cal.App.4th at pp. 454–455 [CALJIC No. 2.15's "permissive inference does not shift the prosecution's burden of proof"]; *People v. Anderson, supra*, 210 Cal.App.3d at pp. 427, 430–432 [CALJIC No. 2.15's "permissive inference empowers the jury to credit or reject the inference based on its evaluation of the evidence, and therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt"].)

---

[6] Section 190.2, subdivision (a)(17) provides: "The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies: [¶] (A) Robbery in violation of Section 211 or 212.5. [¶] … [¶] (G) Burglary in the first or second degree in violation of Section 460."

[7] Harden does not argue that the particular wording of the trial court's modified CALJIC No. 2.15 instruction regarding the special circumstance allegations was misleading or inaccurately stated. Rather, she asserts that the trial court should not have modified CALJIC No. 2.15 to include the special circumstance allegations, whatever wording may have been used. Therefore, although we believe the wording of the trial court's modified CALJIC No. 2.15 instruction could have been improved to more accurately focus on the issue of the allegations' robbery and burglary elements, we refrain from concluding the court's wording was erroneous.

As the California Supreme Court recently stated in *Prieto*: "CALJIC No. 2.15 [does] not directly or indirectly address the burden of proof, and nothing in the instruction absolved the prosecution of its burden of establishing guilt beyond a reasonable doubt." (*People v. Prieto, supra,* 30 Cal.4th at p. 248.) There does not appear to be any logical reason to reach a different conclusion where an allegation, rather than an offense, is involved. Furthermore, CALJIC No. 2.15 must be interpreted in the context of all of the instructions given the jury. In this case, as in *Holt,* "[t]he jury was advised that the instructions were to be considered as a whole and each in the light of all of the others. It was also instructed on all of the required elements of burglary and robbery and was expressly told that in order to prove those crimes, each of the elements must be proved." (*People v. Holt, supra,* 15 Cal.4th at p. 677.) Also in this case, the jury was instructed on all of the required elements of the special circumstance allegations. It was further instructed with CALJIC No. 8.80.1: "The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true."

Therefore, similar to the court's conclusion in *Holt,* "[w]e see no possibility that giving the jury the additional admonition that it could not rely solely on evidence that defendant possessed recently stolen property would be understood by the jury as suggesting that it need not find all of the statutory elements of [the special circumstance allegations] had been proven beyond a reasonable doubt." (*People v. Holt, supra,* 15 Cal.4th at p. 677; *People v. Smithey, supra,* 20 Cal.4th at pp. 978–979; cf. *People v. Anderson, supra,* 210 Cal.App.3d at pp. 429–430 [CALJIC No. 2.15, "both on its face and when read in conjunction with the remaining instructions, sufficiently informed the jury of the permissive nature of the inference, and did not impose any constitutionally suspect presumption"].) Because of those other instructions, "there is 'no possibility' CALJIC No. 2.15 reduced the prosecution's burden of proof in this case. [Citation.]" (*People v. Prieto, supra,* 30 Cal.4th at p. 248.)

Citing *Barker,* Harden also asserts the trial court's modified version of CALJIC No. 2.15 misled the jury regarding the felony-murder charge. In *Barker,* the trial court modified CALJIC No. 2.15 to include both murder and robbery as crimes to which its permissive inference could apply. (*People v. Barker, supra,* 91 Cal.App.4th at p. 1172.) We concluded the trial court erred by including the nontheft offense of murder in its modified CALJIC No. 2.15 instruction, reasoning: "Proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed a murder to obtain the property." (*Barker,* at p. 1176, fn. omitted.) In *Prieto,* the California Supreme Court recently approved our holding in *Barker,* stating: "[A]pplication of CALJIC No. 2.15 to nontheft offenses like rape or murder" is improper. (*People v.*

*Prieto, supra,* 30 Cal.4th at pp. 248–249.) However, in this case the trial court did *not* directly, or indirectly, include the offense of murder, whether under a theory of premeditated or felony murder, in its modified CALJIC No. 2.15 instruction. Rather, the trial court instructed that the CALJIC No. 2.15 permissive inference could apply only to "the crimes of *robbery and burglary,* as alleged in counts 2 and 3 of the information, *and ... the allegations alleged in count 1 of the information,* that the murder of Alfred Polchow was committed by the defendant *during the commission of the crimes of robbery and burglary.*" (Italics added.) Therefore, *Barker* and *Prieto* are inapposite and do not require a conclusion that the trial court in this case erred by giving its modified CALJIC No. 2.15 instruction. We do not believe, as Harden argues, that the jury naturally would believe CALJIC No. 2.15 applied to the charge of murder. Although CALJIC No. 2.15, as given by the trial court, included subsequent references to "the crime charged," the jury presumably would have inferred that phrase applied only to the charged *crimes of robbery and burglary* previously referred to and expressly included in its modified CALJIC No. 2.15 instruction and *not* to murder or any other charged crimes (i.e., infliction of cruelty on an elderly person, § 368, subd. (b)(1), or escape without force from jail while felony charges were pending, § 4532, subd. (b), not previously referred to or expressly included in that instruction. The trial court instructed the jury that it must follow the law the court stated to it and disregard any conflicting arguments made by the attorneys concerning the law. We presume the jury followed that instruction.

## C

Assuming arguendo the trial court erred by instructing with its modified form of CALJIC No. 2.15, we nevertheless conclude any error was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. Although Harden argues we should apply the more stringent standard set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], we have previously concluded, and the California Supreme Court recently agreed, that the *Watson* standard applies when CALJIC No. 2.15 is erroneously given regarding nontheft offenses. (*People v. Prieto, supra,* 30 Cal.4th at p. 249; *People v. Barker, supra,* 91 Cal.App.4th at p. 1177; see also *People v. Mendoza* (2000) 24 Cal.4th 130, 177 [99 Cal.Rptr.2d 485, 6 P.3d 150].) ■ The *Watson* standard provides that an error is harmless unless the appellant shows it is reasonably probable a result more favorable to the appellant would have been reached had the error not occurred. (*Watson, supra,* at p. 836.) Considering the entire record in this case, we conclude any error in the trial court's modified form of CALJIC No. 2.15 was harmless under the *Watson* standard. Porter was certain she saw Harden near the Polchows' home about the time of the incident. Frick was 75 to 80 percent certain that it was Harden she saw about that time. Harden's physical description and clothing matched that described by Marion as the

woman she saw in her home. Harden apparently called for the taxi and had previously used the same small taxi company. Harden pawned some of Marion's jewelry shortly after the incident. The jury could reasonably infer Harden made the telephone calls and attempted to otherwise use Marion's bank card. Harden had previously worked as a caregiver and told Frick that morning that she was a caregiver looking for an address.

In 1998 Harden used a similar pretext of needing to make a telephone call to gain entry into an elderly person's home and steal blank checks. The evidence supports the jury's findings that Harden was guilty of murder, robbery and burglary and its true findings on the special circumstance allegations that the murder was committed by Harden during the course of the commission of the robbery and burglary. Furthermore, considering the trial court's instructions as a whole, because the jury was informed of the elements required for those crimes and special circumstance allegations and of the requirement that those elements be proven by the prosecution beyond a reasonable doubt, the potential prejudicial impact of the modified form of CALJIC No. 2.15 was not significant. Therefore, it is not reasonably probable Harden would have obtained a more favorable verdict had CALJIC No. 2.15 been given only as to the crimes of robbery and burglary and not as to the special circumstance allegations. (*People v. Watson, supra,* 46 Cal.2d at p. 836.) Although Harden argues the evidence could have supported a finding that the male seen driving Harden from the scene committed the murder or was otherwise involved in the incident, that evidence is insufficient to show she would have received a more favorable result had the assumed instructional error not occurred.[8]

## II

*Modified CALJIC No. 8.81.17 on Felony-Murder Special Circumstances*

Harden contends the trial court erred by omitting paragraph 2 of the CALJIC No. 8.81.17 felony-murder special-circumstances instruction.

### A

The trial court instructed on the special circumstance of felony murder committed during a robbery with the following modified form of CALJIC No. 8.81.17: "To find that the special circumstance, referred to in these instructions as murder in the commission of a robbery, is true, it must be proved that the murder was committed while the defendant was engaged in or

---

[8] In part III, *post*, we conclude the evidence was insufficient to support a reasonable inference by the jury that the male driver was Alfred's actual killer.

during the commission or attempted commission by the defendant of robbery, in violation of Penal Code [s]ection 211. [¶] The elements of the crime of the robbery are set forth elsewhere in these instructions."[9]

The trial court omitted paragraph 2 of the standard version of CALJIC No. 8.81.17, which states: "[2. The murder was committed in order to carry out or advance the commission of the crime of _____ or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the [attempted] _____ was merely incidental to the commission of the murder.]" (CALJIC No. 8.81.17 (7th ed. 2003).)

B

Harden asserts the trial court erred by omitting paragraph 2 of the standard version of CALJIC No. 8.81.17 because that paragraph expresses a required component of the felony-murder special-circumstance allegations.[10] Section 190.2, subdivision (a) provides: "The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true: [¶] ... [¶] (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies: [¶] (A) Robbery in violation of Section 211 or 212.5. [¶] ... [¶] (G) Burglary in the first or second degree in violation of Section 460."

In *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468] (disapproved on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99]), cited by Harden, the court addressed the meaning of the phrase "during the commission" under a former version of section 190.2. (*Green*, at pp. 59–62.) *Green* stated: "[A] valid conviction of a

---

[9] An identical instruction, except for replacing the word "robbery" with the word "burglary," was given regarding the special circumstance allegation of murder in the commission of burglary.

[10] Although Harden carefully avoids describing paragraph 2 of CALJIC No. 8.81.17 as an *element* of a felony-murder special circumstance, she in effect argues it is a required element by referring to paragraph 2's content as an "indispensable principle of law" and a "clarifying component" of a felony-murder special circumstance.

listed crime was a necessary condition to finding a corresponding special circumstance, but it was not a sufficient condition: the murder must also have been committed 'during the commission' of the underlying crime." (*Id.* at p. 59.) Citing two United States Supreme Court cases that predated enactment of section 190.2, the court inferred that "the Legislature [in enacting section 190.2] must have intended that each special circumstance provide a rational basis for distinguishing between those murderers who deserve to be considered for the death penalty and those who do not." (*Green*, at p. 61, fn. omitted.) *Green* stated: "The Legislature's goal is not achieved, however, when the defendant's intent is not to steal but to kill and the robbery is merely incidental to the murder—'a second thing to it,' as the jury foreman here said—because its sole object is to facilitate or conceal the primary crime." (*Ibid.*) Because the evidence in *Green* clearly showed that the murder was the primary crime and the robbery was merely incidental to the murder, the court reversed the true finding on the special circumstance allegation. (*Id.* at p. 62.)

However, in *People v. Kimble* (1988) 44 Cal.3d 480 [244 Cal.Rptr. 148, 749 P.2d 803], also cited by Harden, the court stated: "[W]e reject the dissent's novel suggestion that *Green*'s clarification of the scope of felony-murder special circumstances has somehow become an 'element' of such special circumstances, on which the jury must be instructed in all cases regardless of whether the evidence supports such an instruction. Our cases have never treated *Green* in this fashion. [Citations.] Nor have we so treated other 'clarifying' holdings in analogous settings. [Citations.] These cases disclose that the mere act of 'clarifying' the scope of an element of a crime or a special circumstance does not create a new and separate element of that crime or special circumstance." (*Id.* at p. 501.) *Kimble* concluded in the circumstances of that case that the trial court did *not* err by omitting then paragraph 3 (now paragraph 2) of CALJIC No. 8.81.17 that incorporated the *Green* holding, explaining there was no evidence to support an inference that the other felonies (i.e., rape and two robberies) were merely incidental to the primary goal of murder. (*Kimble*, at pp. 502–503.) *Kimble* stated: "[T]here was abundant evidence that the rape and robberies were not 'incidental' to the murders." (*Id.* at p. 503.)

Although it is true, as Harden notes, that after *Kimble* the California Supreme Court, citing *Green*, stated that the felony-murder special circumstance "requires" a finding that the defendant "committed the act resulting in death in order to advance an independent felonious purpose" (*People v. Bonin*

(1989) 47 Cal.3d 808, 850 [254 Cal.Rptr. 298, 765 P.2d 460]; *People v. Berryman* (1993) 6 Cal.4th 1048, 1088 [25 Cal.Rptr.2d 867, 864 P.2d 40], overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 [72 Cal.Rptr.2d 656, 952 P.2d 673]), those subsequent cases did not address circumstances in which the trial court had omitted paragraph 2 of CALJIC No. 8.81.17.

In *People v. Mendoza, supra,* 24 Cal.4th 130, the court summarized the *Green* rule: "[T]o prove a felony-murder special-circumstance allegation, *the prosecution must show that the defendant had an independent purpose for the commission of the felony, that is, the commission of the felony was not merely incidental to an intended murder.* [Citation.]" (*Id.* at p. 182, italics added.)

Furthermore, in *People v. Navarette* (2003) 30 Cal.4th 458 [133 Cal.Rptr.2d 89, 66 P.3d 1182], the California Supreme Court recently concluded that the trial court did not err by omitting paragraph 2 of CALJIC No. 8.81.17. (*Navarette,* at p. 505.) *Navarette* stated: "*The second paragraph of CALJIC No. 8.81.17 is appropriate where the evidence suggests the defendant may have intended to murder his victim without having an independent intent to commit the felony that forms the basis of the special circumstance allegation. In other words, if the felony is merely incidental to achieving the murder—the murder being the defendant's primary purpose— then the special circumstance is not present,* but if the defendant has an 'independent felonious purpose' (such as burglary or robbery) and commits the murder to advance that independent purpose, the special circumstance is present. (*People v. Green*[, *supra,* 27 Cal.3d at p. 61]; [citations].)

"*Here, the record includes no significant evidence of any motive for the murders other than burglary and/or robbery* …. [T]he record does not include any evidence (other than the brutality of the crimes) that defendant had an unconscious hatred for women, and defendant did nothing to develop this theory of the case at trial, making only a passing speculative reference to this theory at closing argument. Defendant's primary defense at trial was that he was too intoxicated to act with intent. *Under the circumstances of the case as presented to the jury, the second paragraph of CALJIC No. 8.81.17 was not required.*" (*Navarette, supra,* at p. 505, italics added.)

■ We conclude *Navarette,* together with *Kimble* and *Mendoza,* are binding precedent setting forth the principle that paragraph 2 of CALJIC No. 8.81.17 may be omitted by a trial court *if* the evidence does not support a reasonable inference (or, in other words, a rational jury would not conclude)

that commission of the felony other than murder was merely incidental to the primary goal of murder. Applying this principle to the record in this case, we conclude the trial court did not err by omitting paragraph 2 from its modified form of CALJIC No. 8.81.17. It cannot reasonably be inferred from the evidence that the commission of the robbery and burglary were merely incidental to the primary goal of murdering Alfred. As in *Navarette*, "the record includes no significant evidence of any motive for the murders other than burglary and/or robbery." (*People v. Navarette, supra*, 30 Cal.4th at p. 505.) There is no evidence Harden knew Alfred before the incident or, when entering the Polchows' home, had the primary goal of murdering Alfred. Rather, the evidence overwhelmingly supports the inference that Harden instead had the primary goal of committing the robbery and/or burglary. As a former caregiver, she previously entered another elderly person's home under the pretext of needing to make a telephone call. Once inside that home, she stole blank checks from the elderly person's purse and attempted to cash them soon afterward. In this case, Harden entered the Polchows' home under the pretext of needing to call a taxi. Once inside their home, Harden stole Marion's jewelry and bank card. Within hours, she pawned some of the jewelry and repeatedly attempted to obtain cash using the bank card. She also made long distance telephone calls using the bank card. Neither the prosecutor nor Harden's trial counsel argued that the robbery and burglary were merely incidental to the primary purpose of murdering Alfred. Accordingly, the only reasonable inference from the evidence is that Alfred's murder was incidental to the primary goal of committing the robbery and burglary.[11]

## C

In Harden's reply brief, she argues paragraph 2 of CALJIC No. 8.81.17 must always be given to preserve the constitutionality of the section 190.2, subdivision (a)(17) felony-murder special circumstance. Citing *Green*, she argues that if paragraph 2 were omitted there would be no distinction between felony murder and the felony-murder special circumstance, and, as a

---

[11] We also are not persuaded by Harden's argument she did not kill Alfred. In part III, *post*, we conclude the evidence was insufficient to support a reasonable inference by the jury that the male driver was Alfred's actual killer. Furthermore, the prosecutor's withdrawal of aiding and abetting instructions is irrelevant to our consideration of the evidence, instructions, and arguments actually presented to the jury. The magistrate's decision to dismiss the robbery charge is irrelevant to our analysis because the trial court reinstituted that charge and, in any event, the magistrate's decision was not based on the actual evidence before the jury. We also are not persuaded by Harden's assertion that the trial court's instruction with CALJIC No. 2.11.5 regarding the possible involvement of another person provided the jury with a sufficient basis on which to conclude she did not kill Alfred in the commission of the robbery and burglary. The prosecutor's closing argument, apparently to the effect that the elements of the felony-murder special circumstance are essentially the same as the elements of felony murder, does not persuade us to conclude there was instructional error in this case.

result, section 190.2, subdivision (a)(17) would violate the Eighth Amendment's prohibition against cruel and unusual punishment. (U.S. Const., 8th Amend.; *People v. Green, supra*, 27 Cal.3d at p. 61; *Williams v. Calderon* (9th Cir. 1995) 52 F.3d 1465, 1476 ["as the California Supreme Court explained in *Green*, it added this element [i.e., paragraph 2] out of constitutional necessity, not mere state law nicety, for without this narrowing construction, the special circumstance would run afoul of the requirements of *Furman v. Georgia* [(1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726]] and *Gregg v. Georgia* [(1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909]] that states provide a rational basis for distinguishing between those who deserve to be considered for the death penalty and those who do not"].) Harden notes a state's capital punishment scheme must employ "some narrowing principle" (*Maynard v. Cartwright* (1988) 486 U.S. 356, 363 [100 L.Ed.2d 372, 108 S.Ct. 1853]) in order to "circumscribe the class of persons eligible for the death penalty" (*Zant v. Stephens* (1983) 462 U.S. 862, 878 [77 L.Ed.2d 235, 103 S.Ct. 2733]) from the class of persons not eligible for that penalty. She further notes that in California the same principles generally apply to cases involving life without the possibility of parole as in cases involving the death penalty. (*People v. Estrada* (1995) 11 Cal.4th 568, 575–576 [46 Cal.Rptr.2d 586, 904 P.2d 1197]; *People v. Garcia* (1984) 36 Cal.3d 539, 545–547, 558 [205 Cal.Rptr. 265, 684 P.2d 826], overruled on other grounds in *People v. Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752]; *In re Bright* (1993) 13 Cal.App.4th 1664, 1668–1670 [17 Cal.Rptr.2d 105].)

We acknowledge the merit of Harden's contention that there must be a distinction between felony murder and the felony-murder special circumstance. ■ However, we are bound to follow precedent established by the California Supreme Court. In *Green*, that court discussed *Furman* and *Gregg* and referred to the Legislature's apparent cognizance of the need for such a distinction. (*People v. Green, supra*, 27 Cal.3d at pp. 48–50, 61–62.) However, in *Green*'s progeny, the California Supreme Court has concluded paragraph 2 of CALJIC No. 8.81.17 is not required to be given if the evidence does not support a reasonable inference that the felony other than murder was merely incidental to the primary goal of murder. (*People v. Navarette, supra*, 30 Cal.4th at p. 505; *People v. Mendoza, supra*, 24 Cal.4th at p. 182; *People v. Kimble, supra*, 44 Cal.3d at pp. 502–503.) In deciding those cases, we presume the California Supreme Court was aware of the constitutional issue it previously discussed in *Green*, even though that issue was not expressly discussed in those subsequent cases. We therefore infer the California Supreme Court has implicitly concluded omission of paragraph 2 of CALJIC No. 8.81.17 does not violate the Eighth Amendment in cases in which the evidence does not support a reasonable inference that the other felony was merely incidental to the primary goal of murder. Accordingly, if

the omission of paragraph 2 violates the Eighth Amendment, Harden must seek review of that issue by the California Supreme Court.

## D

Assuming arguendo the trial court erred by omitting paragraph 2 of CALJIC No. 8.81.17, we nevertheless conclude that error was harmless beyond a reasonable doubt. The California Supreme Court recently confirmed that the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] applies in cases of CALJIC No. 8.81.17 instructional error. (*People v. Prieto, supra,* 30 Cal.4th at pp. 256–257.) In *Prieto,* the court concluded the trial court erred by giving paragraph 2 of CALJIC No. 8.81.17 in the disjunctive (or) rather than the conjunctive (and). (*Prieto,* at p. 256.) *Prieto* stated: "In this case, 'there was no evidence that reasonably or rationally suggests that' defendant committed the robberies, kidnappings, or rapes in order to carry out or advance the murder. [Citation.] ... No evidence suggests that defendant or his cohorts intended to murder [the victim] at the time they formed the intent to rob and kidnap the women or that the robberies and kidnapping were incidental to the murder. Rather, the evidence strongly suggests that defendant committed the murder in order to advance the robberies and kidnappings or 'to facilitate the escape therefrom or to avoid detection.' ... At best, this evidence suggests that defendant developed the intent to kill [the victim] and the intent to rape her at the same time. (*People v. Mendoza*[, *supra,*] 24 Cal.4th 130, 182 [99 Cal.Rptr.2d 485, 6 P.3d 150] [concurrent intent to kill and commit a felony supports a felony-murder special circumstance finding].) Thus, the evidence shows that defendant committed the murder to advance the rape or to facilitate his escape or to avoid detection—and did not commit the rape to further the murder." (*Prieto, supra,* at p. 257.) Accordingly, *Prieto* concluded " 'the failure to give CALJIC No. 8.81.17 in the conjunctive was harmless' beyond a reasonable doubt. [Citation.]" (*Ibid.*)

In the circumstances of this case, we conclude, like the court in *Prieto,* there is no evidence that reasonably or rationally suggests Harden committed the robbery and burglary to carry out or advance the murder. No evidence suggests Harden intended to murder Alfred before or at the time she formed the intent to rob Alfred and burglarize the Polchows' home or that the robbery and burglary were incidental to the murder. (*People v. Prieto, supra,* 30 Cal.4th at p. 257.) Rather, the evidence overwhelmingly suggests Harden committed the murder to advance the robbery and burglary. (*Ibid.*) There is

no evidence Harden knew Alfred before the incident or, when entering the Polchows' home, intended to murder Alfred. As a former caregiver, she previously entered another elderly person's home under the pretext of needing to make a telephone call. Once inside that home, she stole blank checks from the elderly person's purse and attempted to cash them soon afterward. In this case, Harden entered the Polchows' home under the pretext of needing to call a taxi. Once inside their home, Harden stole Marion's jewelry and bank card. Within hours, she pawned some of the jewelry and repeatedly attempted to obtain cash using the bank card. She also made long distance telephone calls using the bank card. Accordingly, the only reasonable inference from the evidence is that Harden committed the murder in order to advance or carry out the robbery and burglary. Therefore, any instructional error by the trial court in omitting paragraph 2 of CALJIC No. 8.81.17 is harmless beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. at p. 24; *Prieto, supra,* at pp. 256–257.)

III[†]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied August 19, 2003, and appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.

[†] See footnote, *ante,* page 848.