Filed 10/15/14  P. v. Espinoza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048522 |
| v. | (Super. Ct. No. 10CF2088) |
| AGUSTIN ARMAREZ ESPINOZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Reversed.

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Augustin Armarez Espinoza admitted to killing his wife of 37 years, Marisela Espinoza, by bludgeoning her to death. Defendant was arrested and charged with violating section 187, subdivision (a), of the Penal Code[1] for unlawfully killing Marisela. During trial the People presented three theories of first degree murder: express malice with premeditation and deliberation, felony murder,[2] and murder while lying in wait. A jury convicted defendant of first degree murder and the trial court sentenced defendant to 25 years to life.

Defendant appeals, alleging the modified version of CALCRIM No. 376, possession of recently stolen property as evidence of a crime, amounted to prejudicial error, because it created an inference defendant was guilty of felony murder stemming from his possession of stolen property. We find that the trial court erred in modifying the instruction. We cannot find the error harmless because, despite the fact there is substantial evidence defendant committed first degree murder under both the deliberate and premeditated and lying in wait theories, we are unable to determine whether defendant was convicted under a legally valid or legally invalid theory. Therefore the judgment is reversed and remanded for retrial.

I

FACTS AND PROCEDURAL HISTORY

Defendant's life spiraled out of control beginning in 2008. His employer of 20 years relocated to Michigan. Rather than relocate, defendant stayed behind. He received 40 weeks' pay, cashed out his 401(k) worth approximately $104,000, and began collecting unemployment. After a year of drinking and gambling, the money was gone. By July 2010 unemployment checks stopped, defendant had a zero balance in his bank accounts, his credit card was in collections, and he had been caught pawning his family's

---

[1] All further statutory references are to the Penal code unless noted.

[2] Defendant was not charged with robbery.

possessions. To make matters worse, Marisela told defendant she wanted a divorce after discovering defendant's secret cell phone contained sexually explicit text messages from other women. During the next two weeks, while defendant was moving out, Marisela slept on the floor in the spare room and defendant slept in the master bedroom.

Sometime during the morning of July 28, 2010, defendant killed Marisela while she slept by striking her on the head seven times with a monopod (single pole used to support a camera). Defendant bagged his bloody clothes and the monopod, washed his hands, and threw the soap in the trash. The parties agree that sometime prior to leaving the house, defendant took Marisela's purse and cell phone.

On July 28, 2010, at approximately 5:57 a.m., defendant was captured on video at an ATM in Santa Ana, wearing a dark blue or black shirt, attempting to withdraw money from a joint account he shared with Marisela. Defendant used his own debit card, but the transaction was declined. Defendant testified he believed Marisela had blocked his access to the account. He later found out his card had been declined because it had not yet been activated. Defendant did not attempt any other transactions with any other cards at the Santa Ana ATM.

About four hours later, defendant was captured on video at an ATM in San Bernardino, wearing a red shirt, attempting to withdraw money from an account Marisela shared with her mother. He used Marisela's debit card, which had been in her purse. After several failed attempts, defendant gained access to the account and withdrew all available funds, totaling around $300.

Defendant drove back to his house to return Marisela's cell phone, which he had been using to listen to voicemail messages left by concerned coworkers. He did not check to see if Marisela was alive. Later that evening, defendant drove to Mexico and discarded his bloody clothes, the monopod, and Marisela's purse. He was arrested at the United States/Mexican border the next day, attempting to return to the United States, and charged with first degree murder.

3

The prosecutor and defendant presented different timelines and motives explaining when and why defendant killed Marisela. Defendant's version of events included his testimony Marisela initiated an argument around 12:30 a.m. which continued for approximately 40 minutes. Afterwards, Marisela left the master bedroom for the spare room. Ten minutes later defendant entered the spare room with the intent to talk to Marisela, but Marisela was already asleep. Defendant testified he was angry when he entered the room, but on a scale of one to 10, he was only about a six. Inexplicably, he picked up the monopod and bludgeoned Marisela to death. After the aforementioned cleanup, defendant left the residence and proceeded to visit the first ATM in Santa Ana. Defendant could not explain why or how he changed shirts between ATM visits.

According to the prosecution's version, defendant was upset his card was rejected from the Santa Ana ATM. Believing Marisela had blocked his access to their joint account, defendant was furious and went home and killed Marisela to obtain access to her debit card. The prosecutor alleges the murder happened just after 6:00 a.m. and was motivated by defendant's dire financial situation.

II

DISCUSSION

We review the validity of jury instructions de novo. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 831.) Defendant alleges the trial court improperly modified CALCRIM No. 376 to include felony murder. The modified instruction given to the jury is as follows: "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not find felony murder in the course of a robbery based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed felony murder in the course of a robbery. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where and when the defendant

4

possessed the property, along with any other relevant circumstances tending to prove his guilt of robbery. [¶] Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to that conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

"Similar to its predecessor, CALJIC No. 2.15, CALCRIM No. 376 is based on a 'long-standing rule of law [that] allows a jury to infer guilt of a theft-related crime from the fact a defendant is in possession of recently stolen property when coupled with slight corroboration by other inculpatory circumstances [that] tend to show guilt.' [Citation.]" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 709 fn. omitted.) California Supreme Court decisions have made it clear that issuing such an instruction for nontheft offenses is generally erroneous. (*People v. Montes* (2014) 58 Cal.4th 809, 876 [error to give CALJIC No. 2.15 in connection with murder charge]; *People v. Rogers* (2013) 57 Cal.4th 296, 334 [murder and arson charges]; *People v. Moore* (2011) 51 Cal.4th 1104, 1131 [murder]; *People v. Prieto* (2003) 30 Cal.4th 226, 248-249 [murder].) The bench notes for CALCRIM No. 376 also suggest limiting the instruction to theft and theft-related crimes.

The majority of CALCRIM No. 376 is an accurate statement of the law, even relating to charges of nontheft offenses. (*People v. Moore*, *supra*, 51 Cal. 4th at p. 1130.) The instruction is generally favorable to a defendant, because it emphasizes mere possession of recently stolen property is not sufficient to support a finding of guilt, absent other supporting evidence. (*Ibid.*) It is also accurate to inform the jury the supporting evidence need not be sufficient to prove guilt by itself, because the supporting evidence is combined with the inference drawn from a defendant's possession of the fruits of his crime. (*Id.* at p. 1131.) The error in giving the CALCRIM No. 376 in connection with nontheft offense lies in the following language found in the instruction: "The supporting evidence need only be slight and need not be enough by itself to prove guilt." Including this language when a nontheft offense is involved—here, murder—is erroneous because

5

it invites a jury to draw an inference of a defendant's guilt of murder based on possession of recently stolen property and *slight* supporting evidence. (*People v. Moore*, *supra*, 51 Cal.4th at p. 1131.) "Proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed a murder to obtain the property." (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1176, fn. omitted; see also *People v. Prieto*, *supra*, 30 Cal.4th at p. 249.)

The Attorney General argues felony murder in the course of a robbery is a theft-related offense; therefore, it is not erroneous to include felony murder in CALCRIM No. 376. The Attorney General cites *People v. Harden*, *supra*, 110 Cal.App.4th 848 in support. In *Harden*, the modified instruction for possession of stolen property included murder during the commission of robbery and burglary: "'If you find that the defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crimes of robbery and burglary, as alleged in counts 2 and 3 of the information, *and that the allegations alleged in count 1 of the information, that the murder of [the victim] was committed by the defendant during the commission of the crimes of robbery and burglary.* Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt. . . .'" (*Id*. at pp. 855-856, original italics.) The *Harden* court found no valid reason to preclude the instruction's use regarding theft-related allegations when the allegations included elements of robbery or burglary, because if properly worded, the instruction would benefit the defendant by warning the jury not to infer the existence of the element of robbery or burglary from the defendant's possession of stolen property. (*Id*. at p. 857.)

A theft-related offense is not synonymous with a theft-related allegation. (*People v. Harden*, *supra*, 110 Cal.App.4th 848.) Although *Harden* found no reason to preclude a properly worded CALJIC No. 2.15 for use with theft-related allegations, our

6

Supreme Court has held otherwise.  (*People v. Montes*, *supra*, 58 Cal.4th at p. 876.)  A jury found the defendant guilty of first degree murder, kidnapping during the commission of a carjacking, carjacking, and found true the special circumstance allegation that murder was committed during the commission of a robbery.  (*Id*. at p. 819.)  The California Supreme Court found the instruction, which included all crimes and allegations, was erroneous.  (*Id.* at p. 876.)  "We have held it is error for a court to instruct the jury with CALJIC No. 2.15 for nontheft offenses.  [Citation.]"  (*Ibid*.)  The court found the error harmless because "the prosecutor properly directed the jury to apply CALJIC No. 2.15 . . . to the theft elements of robbery or carjacking, [which supported a theory] of felony murder."  (*Ibid*.)

Furthermore, *Harden* is distinguishable.  In *Harden*, the trial court specifically instructed the jury that defendant's possession of stolen property plus slight corroborating evidence is sufficient to warrant an inference of defendant's guilt of the crimes of robbery or burglary.  (*People v. Harden*, *supra*, 110 Cal.App.4th at pp. 855, 859.)  It was not modified to allow the jury to infer a murder occurred, simply because defendant possessed a victim's check card and jewelry.  (*Id*. at p. 849.)  The instruction in *Harden* is clearly and properly worded, therefore, it is inapposite to the instruction involved in the instant matter.

Modification of CALCRIM No. 376 to include murder, of any sort, is erroneous.  In *People v. Moore*, *supra*, 51 Cal.4th 1104, the California Supreme Court held reference to murder in the modified CALJIC No. 2.15 instruction created harmless error.  (*Id*. at p. 1131.)  The defendant and his accomplices killed two people while robbing their home.  (*Id*. at p. 1114.)  The jury convicted the defendant of two counts of first degree murder, two counts of robbery, and one count of burglary.  The instruction, as modified, contained the following language:  "'If you find that the defendant was in conscious possession of recently stolen property, the fact of such possession is not by itself sufficient to permit an inference that the defendant is guilty of the crimes charged.'"

7

(*Id*. at p. 1130.)  The court held the instruction, which contained the generalized reference to "crimes charged" rather than listing specific crimes, constituted error.  "Crimes charged" could refer to murder, which was not considered a theft-related charge, even though it occurred in conjunction with the robbery and burglary.  (*Id*. at p. 1130.)

Modifying CALCRIM No. 376 to include felony murder in the course of a robbery is problematic, especially in defendant's case.  We know defendant killed Marisela and took her purse, but it was disputed whether defendant killed Marisela in order to take her purse and whether he used force or fear in doing so.

CALCRIM No. 376 invited the jury to infer the purse was stolen.  Such an inference is problematic because a husband does not necessarily steal his wife's purse, simply by taking it.  On appeal, defendant highlights the problems arising out of the robbery theory, but does not go so far as to allege a legally incorrect theory.  While this issue has been waived (Cal. Rules of Court, rule 8.204 (a)(1)(B)), we nonetheless note the jury was not instructed regarding the community property aspects of the property taken.

Under the instruction given by the trial court—"[t]he supporting evidence need only be slight and need not be enough by itself to prove guilt"—left the jury free to infer Marisela's purse was stolen while she was still alive and the theft occurred during the killing.  The modified instruction invited the jury to presume the word "guilt" referred to felony murder, which might have led the jury to take an impermissible short cut and conclude defendant was guilty of felony murder if he possessed stolen property.  (See *People v. Barker*, *supra*, 91 Cal.App.4th at p. 1173.)  Moreover, the instruction could be interpreted as stating the defendant may be found guilty of felony murder based on slight evidence.

At the very least, modifying CALCRIM No. 376 brings "confusion into an already complex area of law."  (*People v. Barker*, *supra*, 91 Cal.App.4th at p. 1175.)  The trial judge expressed reservations regarding the instruction on two separate occasions, calling the instruction "awkward."  The People referred to it as a defendant friendly

8

instruction. The trial judge stated, "It's more [of a] People's instruction probably" and said that he did not think "it add[ed] anything to the jury." Based on the surrounding confusion and erroneous wording we cannot conclude the jury both understood and properly applied the instruction.

The trial judge's initial reservation was well-founded. It was erroneous to modify CALCRIM No. 376 as it was modified here. Accordingly, we hold the trial court erred.

Defendant argues the error amounted to a constitutional violation of due process, assuming he was convicted under the felony murder theory. The due process clause under the Fifth and Fourteenth Amendments "'prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.' [Citation.]" (*People v. Moore*, *supra*, 51 Cal.4th at p. 1131.) Defendant concedes CALCRIM No. 376 does not lower the burden of proof via creation of a presumption for theft-related crimes. Instead, defendant argues the inclusion of murder, as the sole charged offense, reduces the burden of proof from beyond a reasonable doubt. Furthermore, defendant asserts the instruction excludes the requirement for a jury to consider other factors tending towards innocence. We find these arguments persuasive.

It is true our Supreme Court has consistently rejected arguments that an erroneous instruction improperly lightens the state's burden of proof. (See *People v. Montes*, *supra*, 58 Cal.4th at p. 876; *People v. Rogers*, *supra*, 57 Cal.4th at p. 336; *People v. Moore*, *supra*, 51 Cal.4th at p. 1133.) The inference does not "'otherwise shift or lower the prosecution's burden of establishing guilt beyond a reasonable doubt

9

[citations].' [Citation.]" (*People v. Rogers*, *supra*, 57 Cal.4th at p. 336.)[3] The last sentence of defendant's modified instruction cautioned the jury, "Remember, you may not convict the defendant of any crime unless you are convinced that each fact essential to that conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." The trial judge instructed the jury on the proper burden of proof on two other occasions and thoroughly instructed the jury on the elements of first degree murder (including premeditation and deliberation, lying in wait, and felony murder), second degree murder, voluntary manslaughter, and robbery.

Defendant also argues the instruction created a constitutionally impermissible, permissive inference. The modification created a permissive inference. Although modifying CALCRIM No. 376 to include murder was erroneous because of the improper inference it invited, it does not mean drawing a connection between possession and guilt is irrational. (See *People v. Moore*, *supra*, 51 Cal.4th at p. 1132.) "Indeed, the United States Supreme Court has acknowledged explicitly the logical connection between possession of the fruits of a crime and the possessor's guilt of that crime, even when the crime at issue is a nontheft offense." (*Ibid*.) The *Moore* court found it was not irrational for the jury to draw an inference of the defendant's guilt of the murders from his possession of the victims' property soon after their deaths and slight corroborating evidence, "especially when it is likely the same person or persons who killed the victims also took their belongings." (*Ibid*.)

---

[3] The modified version of CALJIC 2.15 contained in *Rogers* was as follows: "'[T]he fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of murder or arson. Before guilt may be inferred, there must be corroborating evidence tending to prove his guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant and inference of guilt. . . .'" (*People v. Rogers*, *supra*, 57 Cal.4th at p. 334.) Defendant's attempt at distinguishing *Rogers's* instruction is unpersuasive, because of obvious similarities.

10

Here an inference the jury was free to draw was irrational when considered in light of the charge against him and the wording of the instruction. We do recognize there is substantial evidence defendant committed first degree murder. Defendant admitted he killed Marisela and took her purse, which contained the ATM card he used to access the joint account Marisela shared with her mother. Surveillance video captured him attempting to access his account at the Santa Ana ATM, either immediately before or immediately after he killed Marisela. After he killed Marisela, defendant was captured on video at the San Bernardino ATM using Marisela's card to withdraw the entirety of the joint checking account she shared with her mother. Despite the presence of substantial evidence in the record to support defendant's conviction for first degree murder, there remains an insoluble problem.

In *People v. Chiu* (2014) 59 Cal.4th 155, the California Supreme Court, in affirming the reversal of the defendant's conviction for first degree murder, stated: "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.] Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory . . . ." (*Id.* at p. 167)

The situation here is similar. The manner in which the jury was instructed about one of the theories pursued by the prosecution was legally incorrect. That instruction invited the jury to take an impermissible short cut and conclude defendant was guilty of felony murder if he possessed stolen property. Thus, despite overwhelming evidence to support first degree murder by express malice with premeditation and deliberation and lying in wait, we cannot affirm defendant's conviction unless we conclude the jury did not base its verdict on a felony murder theory.

We find no basis in the record to conclude that the verdict was based on a legally valid theory. Under these circumstances, we must reverse defendant's conviction.

11

# III

## DISPOSITION

The judgment is reversed and remanded for retrial.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.