Filed 3/11/22

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YOLANDA HARDEN,<br><br>    Defendant and Appellant. | D078191<br><br><br>(Super. Ct. No. SCN124346) |


APPEAL from an order of the Superior Court of San Diego County, Joan Weber, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal illustrates the appropriate use of a prior appellate opinion's resolution of an issue of law in determining whether a petitioner has established a prima facie case under Penal Code section 1170.95.[1]

In 2001, a jury convicted Yolanda Harden of murdering 85-year-old Alfred P. during a residential burglary and robbery. This court affirmed her conviction of first degree murder with special circumstances in a partially published opinion, *People v. Harden* (2003) 110 Cal.App.4th 848 (*Harden I.*).) Among other things, *Harden I* rejected a claim of instructional error because there was no evidence sufficient to sustain a finding that Harden was an aider and abettor. (*Id.* at p. 864, fn. 11.) *Harden I* concluded, "a rational jury could not reasonably infer that . . . any person other than Harden[] was Alfred's actual killer."

Now some 20 years later, asserting she "did not kill anyone" but merely "crept in and stole" property, Harden filed a petition to vacate her conviction under section 1170.95. The trial court, which did not have the benefit of the Supreme Court's subsequent decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), denied the petition on the grounds that her claim is "completely inconsistent" with the facts recited in *Harden I.*

We affirm, although on slightly different reasoning. In reviewing the record of conviction at the prima facie stage, a trial court is not permitted to engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 972.) The relevant inquiry at this stage is not whether factual findings recited in the prior appellate opinion are inconsistent with the petitioner's claims. Rather, the key question is whether *legal* determinations in the prior opinion refute those claims as *a matter of law*.

---

1 All statutory references are to the Penal Code.

As we explain, *Harden I* conclusively established as law of the case that Harden's first degree murder conviction was based on a theory that she was the actual killer. Because, as the actual killer, she would still be convicted of first degree murder even under recent amendments to the murder statutes that narrow liability for the crime, the trial court correctly denied her 1170.95 petition without issuing an order to show cause.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Murder*

In October 2000, Alfred and Marion P., then in their 80's, lived in a retirement community. (*Harden I, supra,* 110 Cal.App.4th at p. 851.) Harden tricked her way inside on the pretext of needing to use their telephone to call a taxi. Once inside and while Marion was asleep, she stole jewelry and credit cards. After Harden left, Marion awakened to find Alfred dead in the living room. He had been strangled. (*Id.* at pp. 851–852.)

Marion's stolen credit card was used that day to place telephone calls to Harden's family members and boyfriend. (*Harden I, supra,* 110 Cal.App.4th at pp. 852–853.) Later the same day, Harden pawned Marion's jewelry. (*Id.* at p. 853.)

At trial, the court instructed the jury on deliberate and premeditated murder (CALJIC No. 8.20) as well as felony murder (CALJIC No. 8.21). The jury was also asked to determine whether the killing occurred during "special circumstances"—namely, burglary and/or robbery.[2]

---

[2]  The People's theory was that Harden entered the home intending only to steal, but decided to kill once inside. In closing argument, the prosecutor told the jury that the nature of Alfred's injuries evidenced a deliberate and premeditated killing. Outside the jury's presence, he conceded that felony murder was the stronger of the two theories.

The jury convicted Harden of first degree murder with special circumstances. It also found that she personally inflicted great bodily injury on Alfred.[3] The court sentenced Harden to life in prison without the possibility of parole, to be served consecutively to an aggregate term of six years four months for other convictions. (*Harden I, supra*, 110 Cal.App.4th at p. 855.)

B.    *The First 1170.95 Petition*

In February 2019, Harden filed a petition to vacate her convictions and for resentencing under section 1170.95.[4] The trial court denied the petition a month later without issuing an order to show cause. Harden did not timely appeal that ruling.

C.    *The Second 1170.95 Petition*

In August 2019, Harden filed another section 1170.95 petition. Her accompanying declaration states she "did not kill anyone in the commission of any felony." She claimed to have entered Alfred and Marion's home through an open door, saw "what looked like a man sleeping on the couch," and "crept in and stole various items of property." She asked the court to appoint counsel.

The People filed an "initial response," primarily asserting that having been convicted of first degree murder with "found-true" special circumstances, Harden could not establish a prima facie case. In the reply, defense counsel maintained that Harden's declaration established a prima facie case, despite being contradicted by facts recited in *Harden I*.

---

[3]    Other charges and convictions are stated in *Harden I, supra*, 110 Cal.App.4th at pages 853 to 854.

[4]    The first section 1170.95 petition is not in the record on appeal.

4

The court denied the petition without issuing an order to show cause because Harden's declaration was "completely inconsistent" with trial testimony showing "[Harden] as the killer, not anyone else."

## DISCUSSION

A.  *The Section 1170.95 Framework*

Effective January 1, 2019, Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e).  It provides that a participant in the qualifying felony is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 842.)  The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Under section 1170.95, a person convicted of felony murder or murder based on the natural and probable consequences doctrine may petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if she could not have been convicted of murder because of these statutory changes.  (See *Lewis, supra*, 11 Cal.5th at pp. 959–960.) A section 1170.95 petition must show that:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [and] (2) The petitioner was convicted of murder . . . following a

5

trial . . . .[and] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that she was convicted of murder and is eligible for relief, section 1170.95, subdivision (c) requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that she is entitled to relief. (*Lewis*, *supra*, 11 Cal.5th at p. 961.) If the petitioner has made such a showing, the trial court "shall issue an order to show cause" and conduct an evidentiary hearing. (§ 1170.95, subds. (c) & (d).)

The prima facie inquiry under section 1170.95 is "limited." (*Lewis, supra,* 11 Cal.5th at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*) "[T]he trial court should not decide unresolved factual issues that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811–812.)

Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. " '[I]f the record, including the court's own documents, "contain[s] facts refuting the

6

allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner," ' " thereby deeming him or her ineligible. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review granted Feb. 24, 2021, S266336 and dism. Dec. 1, 2021.) A finding of ineligibility at the prima facie stage may also be based on a legal holding from a prior appellate opinion arising from the conviction. (*Lewis,* at p. 972.)

We independently review a trial court's determination on whether a petitioner has made a prima facie showing. (*People v. Arias* (2021) 66 Cal.App.5th 987, 999, review granted Sep. 29, 2021, S270555.) But before doing that here, we address a procedural argument raised by the Attorney General which if correct would dispose of the appeal.

B.   *The People Forfeited the Argument That Harden's Second Petition Is Barred by Collateral Estoppel*

The Attorney General contends Harden was barred by collateral estoppel from filing a second petition because her first one was denied on the merits and the second raised the same claims. However, the prosecution did not raise the issue of collateral estoppel in the trial court and has therefore forfeited that issue. (See *People v. Morales* (2003) 112 Cal.App.4th 1176, 1185 ["collateral estoppel is waived if not raised in the trial court"].)

In any event, Harden makes claims in this second petition based on new law (e.g., *Lewis*, *supra*, 11 Cal.5th 952 and Stats. 2021, Senate Bill No. 775) that did not exist when she filed her first petition. Accordingly, the second petition would not be barred by issue preclusion. (See *People v. Ruiz*

(2020) 49 Cal.App.5th 1061, 1069 [collateral estoppel not applied if there has been an intervening change in the law].)

C.     *Harden Cannot Establish a Prima Facie Case Because Harden Conclusively Established She Was The Actual Killer*

Turning to the merits, we conclude that the prior appellate opinion establishes Harden's ineligibility for relief under section 1170.95 as a matter of law. Specifically, in that appeal Harden asserted that "because there was evidence from which the jury could have inferred she was not Alfred's actual killer, the trial court erred" by omitting certain jury instructions applicable to persons who although "not the actual killer" acted with either the intent to kill or with reckless indifference to human life. In *Harden I*, she asserted that the jury "could have found" a man seen driving a truck after the incident was the actual killer, or could have had a reasonable doubt whether she actually killed Alfred.

Rejecting these claims in *Harden I*, this court determined there was no evidence from which the jury could have convicted Harden of murder on any theory other than as being the actual killer, stating:

> "Considering the entire record in this case, we conclude there is insufficient evidence to support a reasonable inference that Harden was guilty of Alfred's murder, but did not actually kill him. We are not persuaded by Harden's argument that the jury could have found the male driver actually killed Alfred. [¶] . . . [¶]

> "Because there is no evidence to support a reasonable inference the male was inside [Alfred's] home, we conclude a rational jury could not reasonably infer that the male (or any person other than Harden) was Alfred's actual killer. Accordingly, the trial court did not err by omitting from CALJIC No. 8.80.1 instructions setting for the substance of provisions that would apply only if Harden were not the actual killer . . . ."

8

This holding on insufficiency of the evidence is a *legal* determination. (*People v. Shuey* (1975) 13 Cal.3d 835, 842 (*Shuey*) ["legal sufficiency of evidence" is an issue of law, not fact].)[5] As such, it "established as the law of the case" that Harden's murder conviction is based on her being Alfred's actual killer. (*In re Baird's Estate* (1924) 193 Cal. 225, 234 ["a decision on appeal that the evidence in the case was insufficient to go to the jury . . . was the law of the case"].)

> "[A]n appellate court[']s determination 'that the evidence is insufficient to justify a finding or a judgment is necessarily a decision upon a question of law.' [Citation]. Such a determination 'establishe[s] as the law of the case that all the evidence adduced at the previous trial was insufficient as a matter of law to establish' the finding or judgment." (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

To obtain relief under section 1170.95, Harden must first make a prima facie showing that she could not be convicted of first or second degree murder because of changes to section 188 or 189 made by Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) Those changes only affect the potential culpability of an aider and abettor who herself lacked malice aforethought, or a nonkiller convicted on a felony murder theory. But as explained in *Harden I*, the jury necessarily found beyond a reasonable doubt that Harden acted alone in killing Alfred. She could not have been convicted of murder on an aider and abettor theory, or as a mere participant in a burglary or robbery who did not actually kill the victim. Thus, without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that she cannot establish a prima facie case under section 1170.95, subdivision (c).

---

[5] (*Shuey, supra*, 13 Cal.3d 835 was abrogated on other grounds as recognized in *People v. Bennett* (1998) 17 Cal.4th 373, 389, fn. 5.)

In seeking to overturn the trial court's order, Harden's opening brief contends that at the prima facie stage the trial court is prohibited from relying on the prior appellate opinion. But that brief was filed several months before the Supreme Court's decision in *Lewis*. And as we have explained, *Lewis* holds that a trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section 1170.95 relief." (*Lewis, supra*, 11 Cal.5th at p. 971.) The Supreme Court further recognized that "[a]ppellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972, fn. 6.)

At Harden's counsel's request, we granted leave to file a supplemental brief addressing *Lewis* and Senate Bill No. 775, which amended section 1170.95 effective January 1, 2022.[6] Among other changes, Senate Bill No. 775 amends subdivision (d)(3) of section 1170.95, which specifies the evidence that may be considered at a section 1170.95 hearing following issuance of an order to show cause. As amended, section 1170.95, subdivision (d)(3) provides in part:

> "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. *The*

6      Because Harden's appeal was not final by this date, she is eligible to benefit from this remedial legislation. (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006–1007.) The Attorney General does not contend otherwise.

*court may also consider the procedural history of the case recited in any prior appellate opinion.*" (Italics added.)

Harden maintains that if the court is expressly permitted to "consider the 'procedural history of the case recited in any prior appellate opinion,' " by negative inference it may *not* consider the appellate opinion's recitation of facts (unless otherwise admissible). And while she acknowledges that subdivision (d)(3) by its terms is directed to the hearing that takes place *after* the court determines the petitioner has stated a prima facie case and issues an order to show cause, Harden asserts that the restrictions on using a prior appellate opinion "must necessarily apply to the prima facie stage as well." She notes, for example, that the "preamble" to Senate Bill No. 775 expressly states it is intended to codify *Lewis's* holding regarding "the standard for determining the existence of a prima facie case" and *Lewis* set the prima facie bar "very low." She further maintains that it would be "incongruous" to prohibit a trial court from considering an appellate opinion's factual recitation at a "section (d)(3) evidentiary hearing, but then to permit its consideration to deny a potentially meritorious petition at the prima facie stage."

We mostly agree with these contentions. The substantive question at the prima facie stage is whether the record of conviction shows the petitioner is ineligible for relief *as a matter of law*. As *Lewis* cautions, at the prima facie stage the court cannot weigh evidence. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) As a practical matter, this means that at the prima facie stage, the court cannot compare the facts recited in the prior appellate opinion to those asserted by the petitioner and decide which version to credit.

Nevertheless, the purpose of the prima facie stage is to efficiently dispose of section 1170.95 petitions that, in *Lewis's* words, are "clearly meritless"—a term of art we understand to mean meritless as a matter of law

11

or irrefutably meritless based on procedural history recited in the prior appeal. (See *Lewis, supra,* 11 Cal.5th at p. 971.) To the extent a prior appellate opinion in the same case demonstrates the petition is clearly meritless, nothing in *Lewis* prohibits its use. To the contrary, *Lewis* clearly holds, "there is no categorical bar to consulting the record of conviction at the prima facie stage." (*Id.* at p. 972, fn. 6.)

Harden argues that it does not make sense to preclude the use of an appellate opinion to establish facts at a hearing under subdivision (d), but "then to permit its consideration to deny a potentially meritorious petition at the prima facie stage." But as just explained, at the prima facie stage a prior appellate opinion is not being used to resolve contested facts, but rather to establish conclusions of law or indisputable procedural history. Contrary to Harden's argument, a prior appellate opinion used for these permissible purposes is not being used to deny a potentially meritorious petition at the prima facie stage, but rather to screen out one that is clearly meritless.

In a related argument, Harden maintains that even if a prior appellate opinion may be properly considered at the prima facie stage, here the court improperly used *Harden I* to engage in "judicial factfinding" and to make "a [c]redibility [d]etermination" that is precluded at the prima facie stage. Citing *People v. Davenport* (2021) 71 Cal.App.5th 476 (*Davenport*), she contends the court cannot deny relief at the prima facie stage based on "a summary of facts presented in an appellate opinion."[7]

---

[7] In *Davenport*, the trial court denied a section 1170.95 petition based in part on facts taken from the preliminary hearing transcript. The court of appeal reversed because at the prima facie stage, the inquiry is "a test of the petitioner's pleaded allegations, not an inquiry into the truth of those allegations and the credibility of the evidence on which they rely." (*Davenport, supra,* 71 Cal.App.5th at p. 483.) The record of conviction "bars a

As *Davenport* explains, the prima facie stage is "a test of the petitioner's pleaded allegations, not an inquiry into the truth of those allegations . . . ." (*Davenport, supra,* 71 Cal.App.5th at p. 483.) Still, the record of conviction may appropriately be used at this stage to the extent—but only to the extent—that it "necessarily" and "conclusively" refutes the petitioner's claims. (*Ibid.*)

Accordingly, in this case the trial court erred in denying Harden's petition on the grounds that there was an irreconcilable conflict between the facts stated in *Harden I* and those in the section 1170.95 petition. But as we have explained, the ruling itself was correct because *Harden I* establishes as a matter of law that Harden's murder conviction was necessarily based on a finding that she was the actual killer, and that disqualifies her from seeking relief under section 1170.95. In denying Harden's petition for resentencing without the benefit of the Supreme Court's decision in *Lewis*, the trial court employed reasoning that we now know was faulty. But its ultimate conclusion was correct, and we therefore affirm the ruling. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [" '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.' "]; see also *People v. Brooks* (2017) 3 Cal.5th 1, 39 ["if the ruling was correct on any ground, we affirm"].)[8]

---

petitioner from pleading things that the record of conviction necessarily establishes are untrue"—that is, "conclusively" refutes. (*Ibid.*)

[8]     When the Legislature was considering Senate Bill No. 775, opponents expressed concern about certain "logistical issues," rendering "problematic" its application to convictions "that contain no admissible record of conviction . . . ." (Senate Bill Third Reading Analysis, SB 775, as amended Sept. 1, 2021, p. 3.) We do not comment on that issue, nor any other potentially "problematic" ones not before us. Our holding is necessarily limited to the circumstances presented by this case—in which the record of

Harden also asserts that because the jury was not asked to "expressly" find that she was the actual killer, the record of conviction does not refute her petition as a matter of law. However, as explained above, there was no substantial evidence from which the jury could have convicted Harden of murder except as being the actual killer. Moreover, the jury expressly found that she "personally inflicted great bodily injury" upon Alfred (within the meaning of section 12022.7, subdivision (c)) during the burglary. Thus, contrary to Harden's claim, the jury did make an express finding that she inflicted the fatal injuries. (See *People v. Cole* (1982) 31 Cal.3d 568, 578–579 [under section 12022.7, "personally inflict" means those who "directly perform" the act causing physical injury].)[9]

---

conviction demonstrates as a matter of law that the section 1170.95 petition is "clearly meritless" within the meaning of *Lewis*, *supra*, 11 Cal.5th at page 971.

[9]    Citing *People v. Offley* (2020) 48 Cal.App.5th 588, Harden contends the finding that she personally inflicted great bodily injury does not mean the jury found she actually killed Alfred. But in that case, the defendant was one of *five* people who participated in a gang-related shooting into an occupied vehicle. (*Id.* at p. 592.) Although the jury found that Offley had personally used a gun, he had arguably been convicted of murder under the natural and probable consequences doctrine. The personal use enhancement did not require that he acted with either the intent to kill or with conscious disregard, and thus it did not irrefutably establish he acted with malice. (*Id.* at p. 598.) In contrast here, where there was no evidence sufficient to sustain a finding that anyone other than Harden killed Alfred, the jury's finding that she personally inflicted great bodily injury on Alfred necessarily amounted to a finding that she was the actual killer.

## DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.