Filed 7/12/22; Opinion following rehearing

OPINION ON REHEARING

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YOLANDA HARDEN,<br><br>    Defendant and Appellant. | D078191<br><br><br><br>(Super. Ct. No. SCN124346) |

APPEAL from an order of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Heather M. Clark and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

Recent amendments to California's homicide statutes significantly limit the circumstances in which someone who did not actually kill the victim can be convicted of murder. Penal Code section 1170.95[1] provides an avenue for those convicted before these statutory changes became effective to receive the benefits of the new legislation.

Invoking section 1170.95, Yolanda Harden seeks to vacate her conviction of first degree murder. She claims now, some 20 years later, that she was not the actual killer. But as we explain, the jury instructions and verdicts *conclusively* establish—with no factfinding, weighing of evidence, or credibility determinations—that in 2001 Harden was convicted as the actual killer. That makes her ineligible for relief as a matter of law, despite her contrary factual claim. Accordingly, we affirm the order summarily denying her section 1170.95 petition. (*Id.*, subd. (c).)

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Murder*

In October 2000, Alfred and Marion P., then in their 80's, lived in a retirement community. (*People v. Harden* (2003) 110 Cal.App.4th 848 (*Harden I*).) Harden tricked her way inside on the pretext of needing to use their telephone to call a taxi. Once inside and while Marion was asleep, she stole jewelry and credit cards. After Harden left, Marion awakened to find Alfred dead in the living room. He had been strangled. (*Id.* at pp. 851–852.)

Marion's stolen credit card was used that day to place telephone calls to Harden's family members and boyfriend. (*Harden I, supra*, 110 Cal.App.4th at pp. 852–853.) Later the same day, Harden pawned Marion's jewelry. (*Id.* at p. 853.)

---

[1] Undesignated statutory references are to the Penal Code.

At Harden's trial in 2001, the People's theory was that she entered the home intending only to steal, but decided to kill once inside. In closing argument, the prosecutor told the jury that the nature of Alfred's injuries evidenced a deliberate and premediated killing. Outside the jury's presence, he conceded that felony murder was the stronger of the two theories.

The court instructed the jury on murder (CALJIC No. 8.10 (6th ed. 1996)[2]), deliberate and premediated murder (CALJIC No. 8.20) as well as felony murder (CALJIC No. 8.21). The court also gave a modified version of CALJIC No. 8.80.1 (1997 rev.) on first degree murder with special circumstances. The jury was also asked to find whether Harden "personally inflicted great bodily injury" in committing the offenses.

The jury convicted Harden of first degree murder with special circumstances and found that she personally inflicted great bodily injury.[3] She was sentenced to life in prison without the possibility of parole, to be served consecutively to an aggregate term of six years four months for other convictions. (*Harden I*, *supra*, 110 Cal.App.4th at p. 855.)

B.     *The First 1170.95 Petition*

In February 2019, Harden filed a petition to vacate her murder conviction and for resentencing under section 1170.95.[4] The trial court denied the petition a month later without issuing an order to show cause. Harden did not timely appeal that ruling.

---

[2]     Further references to CALJIC jury instructions are to the sixth edition of California Jury Instructions, Criminal (1996) unless otherwise specified.

[3]     Other charges and convictions are stated in *Harden I*, *supra*, 110 Cal.App.4th at pages 853 to 854.

[4]     This petition is not in the record on appeal.

C.  *The Second 1170.95 Petition*

In August 2019, Harden filed another section 1170.95 petition. Her accompanying declaration states she "did not kill anyone in the commission of any felony." She claimed to have entered Alfred and Marion's home through an open door, saw "what looked like a man sleeping on the couch," and "crept in and stole various items of property." She asked the court to appoint counsel.

The People filed an "initial response," primarily asserting that having been convicted of first degree murder with "found-true" special circumstances, Harden could not establish a prima facie case. In the reply, defense counsel maintained that Harden's declaration established a prima facie case, despite being contradicted by facts recited in *Harden I*.

The court denied the petition without issuing an order to show cause. Quoting several paragraphs from the factual background in *Harden I*, the judge concluded that Harden's declaration was "completely inconsistent" with trial testimony showing "[Harden] as the killer, not anyone else."

D.  *The Initial Opinion Affirming on Law-of-the-Case Grounds and Rehearing Granted*

During the pendency of this appeal, in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the Supreme Court held that a trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section 1170.95 relief." (*Lewis,* at p. 971.) At Harden's counsel's request, we granted leave to file a supplemental brief addressing *Lewis* and Senate Bill No. 775, which amended section 1170.95 effective January 1, 2022.[5] (Stats. 2021, ch. 551, § 2.)

---

[5] Because Harden's appeal was not final by this date, she is eligible to benefit from this remedial legislation. (See *People v. Montes* (2021) 71

4

After oral argument was waived, we affirmed the order denying Harden's petition, albeit on grounds other than those relied on by the trial court. We noted that in *Harden I*, this court determined there was insufficient evidence to sustain a finding that Harden's role was anything other than that of Alfred's actual killer. We concluded this ruling was law of the case, and thus precluded Harden from asserting otherwise at any subsequent hearing on her section 1170.95 petition.

Following that decision, we granted Harden's petition for rehearing and invited additional briefing on the law-of-the-case analysis. In response, Harden argues that law of the case cannot be invoked where there is a " 'substantial difference in the evidence' " on retrial of the particular issue. (See *People v. Barragan* (2004) 32 Cal.4th 236, 246.) Harden acknowledges that if at a hearing under subdivision (d) of section 1170.95, the evidence material to her role in the murder were substantially the same, then law-of-the-case principles would compel the same legal conclusion to be drawn, i.e., that she was the actual killer. But if the evidence were materially different on that issue, Harden maintains that law of the case would not apply. This is because law of the case "controls the outcome on retrial only to the extent the evidence is substantially the same." (*People v. Boyer* (2006) 38 Cal.4th 412, 442.) Where " 'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.' " (*Barragan,* at p. 246.)

At the prima facie stage of an 1170.95 proceeding, it is of course impossible to know what the evidence will ultimately be at an evidentiary hearing that has not yet occurred. We thus agree with Harden that prior to a

---

Cal.App.5th 1001, 1006–1007.) The Attorney General does not contend otherwise.

5

hearing under section 1170.95, subdivision (d)(3), the law-of-the-case doctrine cannot conclusively establish disentitlement. We therefore focus on whether other portions of the record of conviction—specifically, jury instructions given and the verdicts returned based on them—conclusively establish the jury convicted Harden of murder based on a finding that she was Alfred's actual killer.

## DISCUSSION

### A. *The Section 1170.95 Framework*

Effective January 1, 2019, Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e). (Stats. 2018, ch. 1015, § 3.) It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842.) The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.)

Under section 1170.95, a person convicted of felony murder or murder based on the natural and probable consequences doctrine may petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if she could not have been convicted of murder because of these statutory changes. (See *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.) A section 1170.95 petition must show that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to

6

proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [,] [and] (2) The petitioner was convicted of murder . . . following a trial . . . . [,] [and] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that she was convicted of murder and is eligible for relief, section 1170.95, subdivision (c) requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that she is entitled to relief. (*Lewis*, *supra*, 11 Cal.5th at p. 961.) If the petitioner has made such a showing, the trial court "shall issue an order to show cause" and conduct an evidentiary hearing. (§ 1170.95, subds. (c) & (d).)

The prima facie inquiry under section 1170.95 is "limited." (*Lewis, supra,* 11 Cal.5th at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.) "[T]he trial court should not decide unresolved factual issues[ ] that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary

7

hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811–812, fn. omitted.)

Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner," ' " thereby deeming the petitioner ineligible. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review granted Feb. 24, 2021, S266336 and dism. Dec. 1, 2021.)

We independently review a trial court's determination on whether a petitioner has made a prima facie showing. (*People v. Arias* (2021) 66 Cal.App.5th 987, 999, review granted Sep. 29, 2021, S270555.) But before doing that here, we address a procedural argument raised by the Attorney General which if correct would dispose of the appeal.

B. *The People Forfeited the Argument That Harden's Second Petition Is Barred by Collateral Estoppel*

The Attorney General contends Harden was barred by collateral estoppel from filing a second petition because her first one was denied on the merits and the second raised the same claims. However, the prosecution did not raise the issue of collateral estoppel in the trial court and has therefore forfeited that issue. (See *People v. Morales* (2003) 112 Cal.App.4th 1176, 1185 ["collateral estoppel is waived if not raised in the trial court"].)

8

In any event, Harden makes claims in this second petition based on new law (e.g., *Lewis, supra*, 11 Cal.5th 952 and Stats. 2021, ch. 551 (Sen. Bill No. 775)) that did not exist when she filed her first petition. Accordingly, the second petition would not be barred by issue preclusion. (See *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1069 [collateral estoppel not applied if there has been an intervening change in the law].)

C.    *Harden Cannot Establish a Prima Facie Case Because the Record of Conviction Conclusively Establishes She Was Convicted as the Actual Killer*

We begin with the jury instructions on murder, felony murder, special circumstances, and personal infliction of great bodily injury to determine if they chart a path where even one juror could have convicted Harden on a theory other than as Alfred's actual killer.

On murder, the court instructed on malice aforethought and felony murder with CALJIC No. 8.10, which states in part:

> "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of a robbery or burglary, is guilty of the crime of murder . . . ."

The jury found Harden guilty of first degree murder, but was not asked to indicate whether the basis was malice aforethought or felony murder. If the jury found her guilty on a malice theory, Harden would be ineligible for resentencing because section 1170.95 applies only where the murder conviction is based on felony murder, or the natural and probable consequences doctrine, or any other theory under which malice is imputed based on a person's participation in a crime. (§ 1170.95, subd. (a).) Moreover, defendants convicted of felony murder are not eligible for relief if they were the actual killer. Here, Harden's jury was instructed on felony murder, but

9

not on the natural and probable consequences doctrine or any "other theory" of imputed malice. Accordingly, the only possible basis for section 1170.95 relief is if at least one juror convicted her of felony murder on a theory other than being the actual killer. (§ 1170.95, subd. (a)(3).) In determining if the instructions left open that possibility, it may be helpful, although certainly not dispositive, to start with instructions the jury was *not* given.

Interestingly, the prosecutor initially contemplated asking for aiding and abetting instructions. But once all the evidence was in he decided otherwise, noting "there's no evidence that there was anyone in the house other than this one intruder [Harden], not two people. There's no evidence there was a man in the house."[6] Thus, the jury was not instructed that it could convict Harden as an aider and abettor, accomplice, or as a major participant in the burglary and robbery who acted with reckless indifference to human life.

Turning to instructions that were given to the jury—on first degree felony murder, the court gave CALJIC No. 8.21 as follows:

> "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crimes of Robbery [*sic*] or burglary, is murder of the first degree when the perpetrator had the specific intent to commit that crime."

For the special circumstances allegations, the court gave only a portion of CALJIC No. 8.80.1, stating:

---

[6] The trial court commented, "the only possible piece of evidence that would point to more than one intruder" was testimony that near the scene "a guy in a truck" was seen driving "with the woman [Harden]" after it happened."

10

"If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: [¶]

"1. That Alfred [P.] was murdered during the commission of a robbery. [¶]

"2. That Alfred [P.] was murdered during the commission of a burglary. [¶] . . . [¶]

"If you are satisfied beyond a reasonable doubt that *the defendant actually killed* a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true." (Italics added.)

With respect to the personal infliction of great bodily injury enhancements, the court instructed with CALJIC No. 17.20 (1999 rev.):

"It is alleged in Counts 2 [robbery] 3 [burglary] and 4 [willful cruelty to elder], that in the commission or attempted commission of the crimes therein described the defendant [Harden] personally inflicted great bodily injury on [Alfred P.], a person 70 years of age or older at the time of the crime."

In closing, the prosecutor argued that Harden alone killed the victim, stating, "The killer of Alfred [P.] is here in court . . . and that's the defendant . . . . That's the person who murdered Mr. [P]." Conversely, defense counsel argued, "whoever that was" who strangled Alfred, it "was not Yolanda Harden . . . . [S]he did not do it."

The jury convicted Harden of first degree murder with special circumstances—that is, murder "while engaged in the commission" of robbery and burglary. It also found that "in the commission" of burglary, robbery, and willful cruelty to an elder, she "personally inflicted great bodily injury."

The key question in determining whether the trial court properly denied Harden's petition is whether it was *possible* for a juror to have (1) found her guilty of felony murder, and (2) found to be true the

11

robbery/burglary special circumstances allegations, as well as the personal infliction of great bodily injury allegations, without also finding she personally killed the victim? (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).) We conclude the answer is "no" and that, as instructed, no juror could have voted to convict Harden as anything other than being the actual killer.[7]

First and foremost, the jury was instructed that "every person who unlawfully *kills* a human being with malice aforethought or during the commission" of certain felonies is guilty of "murder." (CALJIC No. 8.10, italics added in first quote.) "This language on its face tells the jury that 'the person who unlawfully kills' is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury." (*People v. Bell* (2020) 48 Cal.App.5th 1, 16.) The jury was instructed on no alternative definition of murder. Thus, Harden's murder conviction necessarily means the jury determined she actually killed Alfred P.

Moreover, the instruction on murder was followed by CALJIC No. 8.80.1, which defines the requisite mental state for a true finding of special circumstances. That instruction begins by stating: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true[.]"

_____

[7] In supplemental briefing and again at oral argument, Harden's counsel referred to a juror declaration submitted with the motion for new trial, which was quoted in the People's opposition, as support for the proposition that "[d]uring jury deliberations jurors discussed the possibility of the man in the truck being involved in the killing." Assuming this evidence is properly before us on appeal, it does not assist Harden. The issue is not whether a juror could reasonably believe someone else might also be involved or responsible. The question at the prima facie stage of the section 1170.95 analysis is whether, *as instructed*, it was possible for a juror to convict Harden of first degree felony murder as other than the actual killer.

Thus, the jury would not even reach the issue of special circumstances unless it first convicted Harden of murder. And as just explained, under CALJIC No. 8.10 a murder conviction required a finding that Harden "unlawfully killed"—that is, she was the actual killer. A hypothetical juror who was not persuaded that Harden actually killed Alfred P. could not have voted that the special circumstance was true. Thus, the unanimous true finding necessarily means the jury convicted Harden as the actual killer.[8]

Further, the jury found true that Harden "personally inflicted great bodily injury" on Alfred P. The natural meaning of "personally inflicted" is that the defendant herself inflicted the injury. (See *People v. Cole* (1982) 31 Cal.3d 568, 578–579 [under section 12022.7, "personally inflict" means those who "directly perform" the act causing physical injury].) At oral argument, Harden's attorney noted that in addition to being strangled, Alfred also suffered fractured ribs. Counsel asserted it was therefore possible for a juror to find this enhancement true on a theory that Harden only fractured Alfred's ribs and someone else strangled him. But Harden was not charged with assault or battery. She was tried for murder, and to find Harden guilty of murder (as instructed under CALJIC No. 8.10), each juror must have found that she was the actual killer. Thus, when viewing the verdicts as a whole, the jury's true finding that Harden personally inflicted great bodily injury necessarily means it determined she strangled Alfred. (See *People v.*

---

8      The fourth paragraph of the CALJIC No. 8.80.1 further supports this interpretation, telling the jury that "if you are satisfied beyond a reasonable doubt that *the defendant actually killed* a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true." (*Id.,* italics added.) By negative inference, a defendant who was not the actual killer could not be guilty of the felony murder special circumstance unless the jury also found a specific intent to kill. In either case, Harden would be ineligible for relief under section 1170.95.

*Jones* (2002) 30 Cal.4th 1084, 1120 [express finding that defendant personally used firearm supports implied finding defendant was actual killer].)[9]

Without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined Harden was the actual killer. The instructions and verdicts show the only path to convicting Harden of first degree felony murder with special circumstances and a personal-infliction-of-great-bodily-injury enhancement was based on a finding she actually killed Alfred P.

In urging the opposite conclusion, Harden maintains that no inferences can be drawn from the jury's true finding on special circumstances because under CALJIC No. 8.80.1 as given, "the jury was not instructed as to the felony murder theory." We disagree. CALJIC No. 8.80.1 as given clearly applied to felony murder because it instructed the jury regarding the situations in which it could find the felony murder special circumstance true.

_____

9    Citing *People v. Offley* (2020) 48 Cal.App.5th 588, Harden contends the finding that she personally inflicted great bodily injury does not mean the jury found she actually killed Alfred P. But that case involved a different enhancement—section 12022.53, subdivision (d), for intentionally discharging a firearm and causing the victim's death. (*Offley*, at p. 592.) On appeal, the court held that a true finding on that enhancement does not preclude relief under section 1170.95 because it did not require that the defendant acted with either the intent to kill or with conscious disregard for life. (*Offley*, at p. 598.) Moreover, the defendant in *Offley* was one of *five* people who participated in a gang-related shooting into an occupied vehicle. (*Id.* at p. 592.) Although the jury found that Offley had personally used a gun, they might have concluded he intended only to commit an assault and if so may have convicted of murder under the natural and probable consequences doctrine. (*Id.* at p. 599.) In contrast here, the jury found Harden "personally inflicted great bodily injury on Alfred" within the meaning of section 12022.7, subdivision (c). As explained in the text, this necessarily means it found Harden was the actual killer, making her ineligible for resentencing as a matter of law.

And while the statute would theoretically permit a true finding in any of three factual settings, the jury was only instructed on one—where the defendant was the actual killer.[10]

After we granted rehearing, Division Three of the Fourth Appellate District considered similar issues in *Lopez, supra*, 78 Cal.App.5th 1. On its record, the *Lopez* court reversed an order denying an 1170.95 petition at the prima facie stage. Before oral argument, we notified the parties to be prepared to address the case.

Although the underlying facts in *Lopez* are quite different from those here,[11] the procedural history is remarkably close. As here, the defendant in *Lopez* was convicted of first degree murder with special circumstances that the murder had occurred during the commission of a robbery. (*Lopez, supra*, 78 Cal.App.5th at p. 4.) Moreover, like Harden, the defendant in *Lopez* was prosecuted solely on the theory he was the actual killer and committed the robbery alone. The jury in *Lopez* was not instructed on aiding and abetting or any other vicarious liability theories. (*Id.* at p. 15.) And just as here, the *Lopez* jury was not instructed on liability by virtue of being a major participant in the underlying felony. (*Ibid.*) Like Harden's case, the special circumstances instruction was modified to eliminate all theories of liability other than defendant having committed the underlying felony. (*Id.* at pp. 15–16.)

---

[10]    As Harden concedes, "[w]hile the jury was instructed as to the first [actual killer] component, they were not instructed as to the other two."

[11]    In *Lopez*, the victim was found naked, bludgeoned to death in his bed. (*Lopez, supra*, 78 Cal.App.5th at p. 6.) The defendant testified that he had been to the victim's apartment with his "friend and drug dealer," who he implied was the actual killer. (*Id.* at p. 8.)

The *Lopez* trial was in 2011 and the court instructed using CALCRIM instructions on murder and special circumstances. For instance, on murder the *Lopez* court instructed with CALCRIM No. 520, which states as the first element: "The defendant committed an act that caused the death of another person." It also instructed with CALCRIM No. 540A that to find the defendant guilty of felony murder, the jury had to conclude that while committing robbery, he "caused the death of another person." (*Lopez, supra*, 78 Cal.App.5th at p. 25.) On the special circumstance allegation, the jury was instructed that to find it to be true, jurors had to conclude the defendant "did an act that caused the death of another person." (*Id.* at p. 25.)

The defendant in *Lopez* appealed an order denying his 1170.95 petition at the prima facie stage. In light of the jury instructions, the appellate court concluded that by returning guilty verdicts and a true finding on the robbery-murder special circumstance, "the jury necessarily found that the victim's death" was a consequence of the defendant's act. (*Lopez, supra*, 78 Cal.App.5th at p. 16.) However, the court noted that a person who commits an act causing death is not *necessarily* the actual killer. (*Ibid.*) Indeed, at trial the defendant testified that he accompanied another person to the victim's apartment and never went into the bedroom where the killing occurred. Accordingly, the *Lopez* court concluded that the record did not conclusively establish that the jury found the defendant *personally killed* the victim. (*Id.* at p. 17.)

16

We agree with that analysis, but applying the same methodology we reach the opposite result here because at Harden's 2001 trial, the court gave CALJIC instructions that were materially different from the CALCRIM instructions given in *Lopez, supra,* 78 Cal.App.5th 1.[12]  The table below highlights these differences:

| Instruction | *Lopez* | Harden |
|---|---|---|
| **Murder** | The People must prove that: "The defendant **committed an act that caused the death** of another person." (CALCRIM No. 520, boldface added; *Lopez*, at p. 17.) | "Every person who **unlawfully kills a human being** with malice aforethought or during the commission . . . of a robbery or burglary, is guilty of murder . . . ." (CALJIC No. 8.10, boldface added.) |
| **Felony Murder** | "While committing [the felony], **the defendant caused the death** of another person." (CALCRIM No. 540A, boldface added; *Lopez*, at p. 16.) | "The unlawful killing of a human being . . . which occurs during the commission of . . . robbery or burglary, is murder of the first degree when the perpetrator had the specific intent to commit that crime." (CALJIC No. 8.21.) |

---

[12]  The California Judicial Council adopted the new CALCRIM instructions effective January 1, 2006.  (See *People v. Thomas* (2007) 150 Cal. App.4th 461, 465.)  Thus, the jury in Harden's case was given the older CALJIC instructions, while the jury in *Lopez* received the newer CALCRIM version.

| Special Circumstances | "To prove that this special circumstance is true, the People must prove that: [¶] . . . [¶] The defendant did an act **that caused the death of another person.**" (CALCRIM No. 730, boldface added; *Lopez*, at p. 16.) | "If you are satisfied beyond a reasonable doubt that the defendant **actually killed a human being**, you need not find that the defendant intended to kill in order to find the special circumstance to be true." (CALJIC No. 8.80.1 (1997 rev.), boldface added.) |
| --- | --- | --- |

Unlike the *Lopez* jury, by returning guilty verdicts on murder with special circumstances, the jury here necessarily found that Harden "kill[ed] a human being" (CALJIC No. 8.10) and "actually killed a human being" (CALJIC No. 8.80.1). Unlike *Lopez*, the jury in this case was not asked whether the defendant merely "committed an act that *caused* the death." (CALCRIM No. 520, italics added.) Moreover, there is no mention in *Lopez* of any instructions regarding the defendant's personal infliction of great bodily injury. In contrast here, Harden's jury also found that she "personally inflicted great bodily injury."

At oral argument, Harden's attorney asserted there were two instructions given here that—as in *Lopez*—would have allowed a juror to convict on the grounds that she caused Alfred's death without being the actual killer: CALJIC Nos. 8.58 and 2.11.5. We disagree.

At trial in *Harden I*, there was evidence that the 80-year-old victim had a "heart condition," "aneurysms," and "the family talked about how ill he was." Over defense objection, the court instructed with CALJIC No. 8.58 that "If a person unlawfully inflicts a physical injury upon another person and that injury is a cause of the latter's death, that conduct constitutes an

18

unlawful homicide . . . even if:  [¶] 1. The person injured had been already weakened by disease, injury, physical condition or other cause; or [¶] 2. It is probable that a person in sound physical condition injured in the same way would not have died from the injury; or [¶] 3. It is probable that the injury only hastened the death of the injured person; or [¶] 4. The injured person would have died soon thereafter from another cause or other causes."  Thus, CALJIC No. 8.58 instructs that if Alfred's *preexisting medical conditions* contributed to his death, that would not relieve Harden's culpability.  The instruction would not have permitted a juror to convict Harden on a theory that she committed an act that contributed to causing his death, but someone else was the actual killer.

Turning to CALJIC No. 2.11.5, it merely tells the jury not to speculate whether someone else might or might not be prosecuted for the same crime:

> "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. [¶]  There may be many reasons why that person is not here on trial.  Therefore, do not discuss of give any consideration as to why the other person is not being prosecuted in this trial or whether she has been or will be prosecuted. Your sole duty is to decide whether the People have proved the guild of the defendant on trial."

The purpose of this instruction is to discourage improper conjecture. Contrary to Harden's contention, it does not provide the jury with a path to convict her of felony murder on a theory other than her being the actual killer.

In sum, although the question presented here and in *Lopez* is the same, the result is different because the jury instructions were materially dissimilar.  Harden's record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that she was

19

the actual killer.  Harden complains that because the jury was not asked to "expressly" find that she was the actual killer, the record of conviction does not refute her petition as a matter of law.  But given the "kills" language in CALJIC No. 8.10, along with "actually killed" in CALJIC No. 8.80.1, and "personally inflicted great bodily injury on Alfred [P.]" in CALJIC No. 17.20, in returning guilty verdicts and true findings, the jury necessarily found she actually killed Alfred P.[13]  The trial court, therefore, correctly denied her petition at the prima facie stage.

---

[13]    Because the superior court's denial of Harden's petition was based on large part on its reading of our *Harden I* decision, much of the parties' initial briefing focused on the appropriate use of an earlier appellate opinion in determining whether a section 1170.95 petition states a prima facie case for relief.  In concluding that Harden's petition was properly denied, we have focused not on *Harden I*, but rather on the jury instructions and verdict.

That said, we agree with Harden that *Lewis* does not permit the superior court to weigh evidence at the prima facie stage.  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  Without the benefit of *Lewis*, the trial court erred in summarily denying Harden's petition on the grounds there was an irreconcilable conflict between the facts stated in *Harden I* and those in the section 1170.95 petition.  But although the trial court employed reasoning we now know was faulty, its ultimate conclusion was correct.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [" '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.' "]; see also *People v. Brooks* (2017) 3 Cal.5th 1, 39 ["if the ruling was correct on any ground, we affirm"].)

## DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.